FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Intervenor/Appellant,

v.

AMERICAN CASUALTY COMPANY OF READING, PA., Defendant–Appellee.

Nos. 91–6147, 91–6148.

United States Court of Appeals,
Tenth Circuit.

Sept. 1, 1992.

---

Eugene J. Comey (Robert F. Schiff and Sean M. Fitzpatrick with him on the brief) of Comey & Boyd, Washington, D.C. (John Henry Rule and David L. Bryant of Gable & Gotwals, Tulsa, Okl., with him on the brief and Katherine H. Haygood, Sr. Atty., F.D.I.C., Washington, D.C., of counsel) for plaintiff-intervenor/appellant.

Raymond J. Jast (Michael Tone, Louis C. Roberts, Brian H. Boyle, and Joanne J. Matousek with him on the brief) of Peterson & Ross, Chicago, Ill., for defendant-appellee.

Before: MOORE, ENGEL * and TACHA, Circuit Judges.

ENGEL, Senior Circuit Judge.

The FDIC appeals from a grant of summary judgment in favor of American Casualty Company. The district court held that American Casualty rightfully refused coverage under a director's and officer's liability insurance policy for loss due to an action brought by the FDIC against former directors of an insolvent bank. At issue is whether an insurance policy containing a "regulatory exclusion" and an "insured v. insured" exclusion provides coverage in an action by the FDIC. We conclude that the regulatory exclusion is effective to bar the FDIC's suit here. We therefore affirm the district court's judgment holding further that this decision renders the insured versus insured argument moot.

## I.

On August 8, 1985, the Oklahoma Commissioner of Banking declared Security Bank and Trust Company of Midwest City ("Security Bank") insolvent. The Commissioner appointed the FDIC the receiver. OKLA.STAT. tit. 6, §§ 1202, 1205 (1981). As receiver, the FDIC entered into a standard purchase and assumption agreement, transferring certain assets and liabilities to another, solvent, bank and transferring the less desirable assets to itself in its corporate capacity. 12 U.S.C. §§ 1821, 1823(c)(2), 1823(c)(4)(A). Among those assets the FDIC retained were Security Bank's claims against its former directors and officers (the "Directors").

In August 1988, the FDIC filed a complaint in the district court seeking over two million dollars from the Directors due to

---

\* Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

their alleged negligence to Security Bank and breach of contract, statutory and common law fiduciary duties owed to Security Bank. The Directors sought the safe haven of insurance, filing claims with American Casualty Company ("ACC") under director's and officer's liability insurance policies ACC had issued to Security Bank in 1983 and 1984.[1]

ACC refused to cover the Directors, relying upon two endorsements to the policies. The first endorsement, present in both the 1983 and 1984 policies, stated:

It is understood and agreed that [ACC] shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the [FDIC], the [FSLIC], the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

This endorsement is known as the "regulatory exclusion." The second endorsement varied in form between the 1983 and 1984 policies. Called the "Insured v. Insured" exclusion, in the 1983 policy it read:

It is understood and agreed that [ACC] shall not be liable to make any payment for Loss ... which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution ... except for a shareholders derivative action brought by a shareholder of the Institution other than an Insured.

The 1984 endorsement contained broader language:

It is understood and agreed that [ACC] shall not be liable to make any payment for Loss in connection with any claim made against the Insured ... based upon or attributable to:

1. Any suit brought by or on behalf of any stockholder or shareholder of the Institution ...; or

2. Any shareholders derivative action brought by a shareholder of the Institution ...; or

3. Any claim made against any Director or Officer by any other Director or Officer or by the Institution....

The Directors filed this suit in 1989 to compel coverage under the policies. The action also sought damages for ACC's initial denial of coverage. In February 1990, the district court allowed the FDIC to intervene in the portion of this action seeking insurance coverage. Shortly thereafter, the FDIC obtained a judgment in the civil action against one of the Directors for more than $1.5 million. The FDIC began a garnishment proceeding against ACC to collect the judgment, and the district court consolidated the two actions.

On cross motions for summary judgment, the district court granted summary judgment to ACC. The district court held that the cited endorsements unambiguously excluded from coverage actions brought by the FDIC. The court further held that these provisions violated neither Oklahoma insurance law nor general public policy. The FDIC appeals from this determination.

## II.

First, the FDIC argues that the regulatory exclusion is ambiguous. This argument presents a question of contract interpretation which we review *de novo* under applicable law. *Nunn v. Chemical Waste Management, Inc.*, 856 F.2d 1464, 1467 (10th Cir.1988). Under Oklahoma insurance law, a genuine ambiguity exists only when the policy contains doubtful language susceptible to two constructions, without resort to and following application of general rules of contract construction.

1. Originally, MGIC Indemnity Corporation issued the 1983 policy to Security Bank. Subsequently, ACC expressly assumed all of MGIC Indemnity's obligations under the policy.

*Dodson v. St. Paul Ins. Co.,* 812 P.2d 372 (Okla.1991). The law does not permit ambiguities to be created by taking contract provisions out of context. *Id.*

ACC argues that the plain meaning of the regulatory exclusion precludes coverage for actions by the FDIC or other regulatory agencies against the officers and directors of a bank. While the FDIC concedes that ACC's interpretation of the statute is plausible, it argues that the exclusion is ambiguous because the FDIC believes an alternative, plausible reading of the exclusion is possible. The FDIC's proposed interpretation focuses on the phrase "based upon or attributable to." By excluding coverage for claims "based upon or attributable to" actions brought by regulatory agencies, the FDIC understands the policy to preclude coverage only for "secondary suits." Under this interpretation, the regulatory exclusion would preclude claims only for suits brought by a third party against Security Bank's directors and officers as a result of an earlier agency action. Coverage would remain available, however, for actions such as this one where the FDIC sues the directors and officers directly. Since ambiguous provisions are interpreted against the insurer, *Wilson v. Travelers Ins. Co.,* 605 P.2d 1327, 1329 (Okla.1980), the FDIC asserts that its interpretation should prevail.

We agree with the district court and with the vast majority of courts to consider this question, that the FDIC's interpretation of the regulatory exclusion is strained. *See, e.g., St. Paul Fire and Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir.1992); *American Casualty Co. v. FDIC,* 944 F.2d 455, 460–61 (8th Cir.1991); *American Casualty Co. v. Kirchner,* No. 91–C–0797–C, 1992 WL 300843 (W.D.Wis. May 22, 1992); *FSLIC v. Shelton,* 789 F.Supp. 1355 (M.D.La.1992); *FSLIC v. Heidrick,* 774 F.Supp. 352 (D.Md.1992); *FDIC v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991); *Finci v. American Casualty Co.,* 323 Md. 358, 593 A.2d 1069 (1991). *But see FDIC v. Mijalis,* No. 89–1316 (W.D.La. Oct. 18, 1991). Examined in the context of the entire policy, the meaning of the awkward "based upon or attributable to" becomes apparent. The policy uses the phrase "based upon or attributable to" immediately before the specific description of the type of claim excluded from coverage in each of the general exclusions. Within each limitation, "based upon or attributable to" acts as a link between the specific type of claim excluded and the more general excluding language. For example, consider the phrasing of two of the exclusions at issue in this case. The regulatory exclusion stated:

> It is understood and agreed that [ACC] shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers *based upon or attributable to:*
>
> any action or proceeding brought by or on behalf of the [FDIC]

The "Insured v. Insured" exclusion in the 1983 policy read:

> It is understood and agreed that [ACC] shall not be liable to make any payment for Loss ... which is *based upon or attributable to* any claim made against any Director or Officer by any other Director or Officer or by the Institution ... except for a shareholders derivative action brought by a shareholder of the Institution other than an Insured.

In each of these sections, the phrase "based upon or attributable to" acts as a connector, while the sentences immediately following it define the limits on the policy. The FDIC's interpretation of the exclusion is untenable because it ignores the role of "based upon or attributable to." Interpreting the regulatory exclusion to preclude coverage for both direct and secondary suits, however, grants each portion of the exclusion its due. Therefore, the regulatory exclusion, if effective, would prevent recovery under this policy, regardless of how the insured versus insured exclusion is interpreted.

### III.

The FDIC offers two grounds for voiding the regulatory exclusion. First, the FDIC claims that the regulatory exclusion should be voided as contrary to public policy. Courts will not invalidate otherwise

valid contracts on general public policy grounds. *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). Rather, a contract will be voided only if enforcement would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents." *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (quoting *Muschany*). The FDIC argues that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") contains just such a statement of Congressional policy.

Congress enacted FIRREA in the shadow of the savings and loan crisis, and revamped the deposit insurance fund system in order to strengthen the country's financial system. FIRREA abolished the Federal Savings and Loan Insurance Corporation and transferred its functions to the FDIC. 12 U.S.C. § 1437. FIRREA also enhanced the regulatory and enforcement powers of the FDIC. Section 1821(d)(2) enunciates some of the broad powers granted to the FDIC. It provides:

> The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to—
>
> (i) all rights, title, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer or director of such institution with respect to the institution and the assets of the institution.

12 U.S.C. § 1821(d)(2). The FDIC retains these broad powers in its corporate capacity. 12 U.S.C. § 1821(d)(3)(A). Relying on these subsections, the FDIC argues that FIRREA announces a policy of allowing the FDIC to assert every right a shareholder or depositor could against an insurer. In other words, if the insurer would provide coverage when an action is brought by a shareholder, then it perforce should also cover the same action when brought by the FDIC. The regulatory exclusions in these policies frustrate the FDIC in its attempts to assert the claims of depositors and shareholders against the Directors because

the absence of insurance coverage lessens the probability of recovery of the large sums of money involved. The lack of insurance coverage for director's and officer's liability also impacts on the FDIC's solvency, an important public concern, because the less the FDIC can recover from responsible parties, the more the FDIC must pay out of its own funds (via the American taxpayer). Therefore, the FDIC argues, the courts should not enforce the regulatory exclusion because to do so would contravene public policy as articulated in FIRREA.

The FDIC correctly notes that FIRREA encompasses Congress's concerns about the powers of the FDIC and its continued solvency. In the absence of a congressional statement on the question of director's and officer's insurance and regulatory exclusion, the FDIC's argument might provide a basis for voiding the exclusion at issue here. Congress, however, did consider the very question here, and explicitly stated its intentions to remain neutral on that question. 12 U.S.C. § 1821(e)(12) states:

> (12)(B) No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a directors or officers liability insurance contract or depository institution bond under other applicable law.

12 U.S.C. § 1821(e)(12)(B). FIRREA's legislative history further indicates Congress' cognizance of the regulatory exclusions in director's and officer's liability insurance. For example, the section by section analysis of FIRREA states:

> The FSLIC and FDIC have frequently challenged clauses in [director's and officer's liability insurance contracts], contending that the clauses are unenforceable. [18 U.S.C. § 1821(e)(12)] remains neutral regarding such litigation and regarding the FDIC's ability under other provisions of State or Federal law, current or future, to pursue claims on such contracts or bonds. For example, if the law of a particular State declares limitations on the enforceability of director's

or officer's liability contracts to be void as against public policy, the FDIC could pursue a claim on such a contract under that State's law.

S.Rep. No. 19, 101st Cong., 1st Sess. 315 (1989). On the Senate floor, one of FIRREA's sponsors, Senator Garn, expanded on Congress' neutrality:

> Substantially all courts, including a court of appeals decision, which have considered the provisions in financial institution bonds which provide that coverage terminates upon the appointment of a receiver have upheld such provisions as enforceable with respect to fidelity or indemnity bonds.
>
> With respect to Directors' and Officers' liability insurance contracts, there has been a substantial split in the decisions relating to the validity of regulatory exclusion clauses that prohibits a regulator from enforcing rights under the contract.
>
> It is not the intent of the conferees to influence these decisions, or to affect the development of case law or statutory provisions relating to the validity of these clauses and director and officer liability insurance contracts or fidelity or indemnity bonds. The intent of the conferees is to remain neutral on these matters.

135 Cong.Rec. S10182, S10198 (101st Cong., 1st Sess. August 4, 1989) (citations omitted). The FDIC's assertion that the same subsection of the same statute expresses a public policy voiding regulatory exclusions directly contradicts these statements that Congress intended to remain neutral on the question in FIRREA. Of course, other statutes, state or federal, could articulate a public policy voiding these exclusions. We simply do not believe section 1821 can be read as doing so.[2]

■ The FDIC's final argument for voiding the regulatory exclusion relies on the Oklahoma Insurance Code. Oklahoma law requires that all endorsements be approved by the Oklahoma Insurance Board prior to the policy's issuance, delivery or use.[3] OKLA.STAT.ANN., tit. 36, § 3610(A) (1981). ACC did not seek approval of the exclusions at issue in this case until years after their use, although the Insurance Board eventually approved substantially the same exclusions imposed by another insurance company. The Oklahoma Code does not provide a penalty for noncompliance. Naturally, the parties have different views on the proper penalty. In the FDIC's view, failure to seek approval voids the exclusions. Predictably, ACC disagrees, arguing that the correct penalty is a fine.

The Oklahoma courts have yet to address the specific question of what penalty to impose when an insurer fails to request approval of exclusions. Recently, the Oklahoma Court of Appeals considered a related issue, the proper remedy when an insurer failed to comply with the statute as to an entire policy. In *Hill v. Agri–Risk Serv. and Traders Ins. Co.*, 827 P.2d 904 (Okla.Ct.App.1992), the court enforced an exclusionary endorsement in an unapproved policy. The court refused to void the entire policy because the Insurance

---

**2.** We find the FDIC's post-argument citation to this circuit's recent *en banc* opinion in *FDIC v. Canfield*, 1992 U.S.App. Lexis 1403 (10th Cir. June 23, 1992) (*en banc*), to be tangential. That appeal concentrates on an entirely different section of FIRREA, section 212(k), and while the FDIC apparently cites it in support of its claim that public policy reasons expressed by Congress in the Act require us to outlaw the offending insurance policy exclusion here, we draw, if anything at all, a different conclusion. Since our *en banc* decision basically resolves a potential ambiguity in the Act by calling for its resolution under applicable state law, we believe that any inference to be drawn from this necessarily supports the language appearing in the Senate and House Report cited *infra* at pages 681–682.

**3.** Specifically, at the time of the issuance of this insurance contract, Oklahoma law provided:

> No basic insurance policy form or application form, where written application is required and is to be made a part of the policy, rider or endorsement form other than surety bond forms and such other insurance policy forms as are hereinafter specifically otherwise provided for shall be issued, delivered, or used unless it has been filed with and approved by the Insurance Board.

OKLA.STAT.ANN., tit. 36, § 3610(A) (1981). The Oklahoma legislature made some minor changes to the statute in 1987.

Code favored the grant of coverage "where an insurer has attempted to avoid an otherwise statutorily mandated requirement for coverage." *Id.* at 906.

The situation here varies significantly from that in *Hill* because the insurer failed to ask for approval only of two endorsements. Voiding the endorsements would not leave the insured without coverage, as it would have in *Hill;* rather it would increase the coverage available to the insured. Nonetheless, we do not believe that the Oklahoma legislature intended that otherwise lawful exclusions be voided simply for failure to comply with section 3610. Voidance of exclusion to an insurance policy is a severe penalty which alters the very terms of the deal between the parties. It requires the insurer to provide coverage for uncontracted risk, coverage for which the insured has not paid. The legislature specifically required voidance of provisions in at least two other sections of the Oklahoma Insurance Code. OKLA.STAT.ANN., tit. 36, §§ 3615, 3617. Its failure to provide a similar explicit penalty for violation of section 3610 indicates that it did not intend such a severe sanction.[4] Therefore, we find that failure to comply with section 3610 does not void the regulatory exclusion in the Directors' insurance policy.

### IV.

For the reasons stated above, we hold that the regulatory exclusion in the director's and officer's liability insurance policy excludes from coverage the action by the FDIC against the Directors of Security Bank. Since the regulatory exclusion precludes coverage, it is unnecessary to discuss the validity and scope of the insured v. insured endorsement. Summary judgment in favor of ACC is AFFIRMED.

---

**4.** Discussing the intent of the Oklahoma legislature as to section 3610, the Oklahoma Supreme Court in a footnote cited an Arizona case calling for fines for the use of unapproved forms. *Roark v. Shelter Mutual Ins. Co.,* 731 P.2d 389, 390 n. 2 (Okla.1986) *citing Southern Casualty Co. v. Hughes,* 33 Ariz. 206, 263 P. 584, 586 (1928). Other courts with similar provisions, however, have held unapproved endorsements unenforceable. *See Mutual Life Ins. Co. v. Daddy\$ Money, Inc.,* 646 S.W.2d 255 (Tex.App.1982); *American Mutual Fire Ins. Co. v. Illingworth,* 213 So.2d 747 (Fla.App.1968).