995 F.2d 471
 FEDERAL DEPOSIT INSURANCE CORPORATION, an instrumentality of
the United States, in its corporate capacity and as the
subrogee of the rights of the depositors of Fidelity Federal
Savings and Loan Association, Plaintiff-Appellant,
and
Howard International, Incorporated; Development
Funding/highpointe, Incorporated, Plaintiffs,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, INC.,
Defendant-Appellee,
and
Philip A. Asplen, Jr., Executor for Gerard A. Heidrick, Jr.,
deceased; Edmund A. Chrzanowski; Francis A.
Korwek; Kendall L. White; Richard M.
Smith, Defendants.
 No. 92-1447.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 27, 1992.
Decided Jan. 4, 1993.
Amended by Order Filed May 6, 1993.
 
 1
 Eugene Joseph Comey, Comey & Boyd, Washington, DC, argued (Robert F. Schiff, Sean M. Fitzpatrick, Comey & Boyd, Timothy W. Bergin, Paul E. Gutermann, Julia Reynolds Johnson, Squire, Sanders & Dempsey, Colleen B. Bombardier, Sr. Counsel, Lawrence H. Richmond, James P. Flannery, Sr. Atty., F.D.I.C., Washington, DC, on brief), for plaintiff-appellant.
 
 
 2
 Robert Michael Pozin, Ross, Dixon & Masback, Washington, DC, argued (John R. Gerstein, Thomas T. Locke, Seth D. Berlin, on brief), for defendant-appellee.
 
 
 3
 Before HAMILTON, Circuit Judge, SPROUSE, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 JOSEPH H. YOUNG, Senior District Judge:
 I.
 
 4
 Fidelity Savings and Loan Association (Fidelity) was a mutual savings and loan association organized under the laws of the United States, chartered by the Federal Home Loan Bank Board (FHLBB), and located in Baltimore, Maryland. Fidelity's deposits were insured by the Federal Savings and Loan Insurance Corporation (FSLIC). Fidelity purchased a directors' and officers' liability insurance policy (the policy) from MGIC Indemnity Corporation (MGIC), and American Casualty Company (ACC) subsequently bought that insurance contract. Fidelity's insurance policy provides a three million dollar aggregate limit of liability per policy year and covers "all Loss which the Directors and Officers or any of them shall become legally obligated to pay." However, the policy also contains a regulatory exclusion provision, which states that the insurer is not liable for any claims made by or attributable to the FHLBB or FSLIC against Fidelity's directors or officers.
 
 
 5
 In 1983, the FHLBB placed Fidelity in a conservatorship. In 1984, the FHLBB appointed FSLIC to be Fidelity's receiver. FSLIC thereby succeeded to all of Fidelity's rights against its directors and officers. Those claims and interests are now held by the Federal Deposit Insurance Corporation (the FDIC) in its corporate capacity as Manager of the FSLIC Resolution Fund. In 1985, ACC denied coverage for those claims. This case arose from attempts by FSLIC to hold ACC liable under the policy for losses to Fidelity allegedly caused by its individual officers and directors.
 
 
 6
 In 1986, FSLIC filed suit against several former directors and officers of Fidelity, seeking to recover damages for their alleged negligence and breach of fiduciary duties in approving imprudent loans. Naming ACC as a defendant, FSLIC also sought a declaratory judgment that ACC was obligated to provide insurance coverage for these claims under the directors' and officers' liability policy. ACC moved for Summary Judgment, arguing that the insureds failed to provide timely or adequate notice of their claims and that the regulatory exclusion provision precluded coverage for losses based upon or attributable to suits brought by FSLIC. FSLIC filed a cross-motion for Summary Judgment on the grounds that ACC received proper and timely notice and that the regulatory exclusion provision was ambiguous and contravened federal law and public policy.
 
 
 7
 On January 25, 1991, the District Court granted Summary Judgment for the FDIC, holding that the insureds provided timely and adequate notice and that the ambiguous regulatory exclusion provision should be construed in favor of coverage. On October 31, 1991, however, the District Court granted ACC's motion for reconsideration and entered Summary Judgment in favor of ACC based upon the intervening ruling of the Maryland Court of Appeals in Finci v. American Casualty Co., 323 Md. 358, 593 A.2d 1069 (1991), which held that a similar regulatory exclusion provision was unambiguous and barred coverage of claims asserted by a state deposit insurance agency.
 
 II.
 
 8
 A grant of Summary Judgment is reviewed de novo. Fed.R.Civ.P. 56(c) provides that Summary Judgment shall be entered whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 9
 The plain language of the regulatory exclusion provision and the overwhelming weight of case law demonstrate that it is not ambiguous. The regulatory exclusion at issue here provides:
 
 
 10
 It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to: any claim or action or proceeding brought by the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation.
 
 
 11
 The plain language of the provision clearly bars coverage for any claim "based upon or attributable to" the FDIC, whether in its regulatory capacity or as receiver of a failed institution. As ACC argues, "any" usually means "all."
 
 
 12
 In addition, the case law supports this broad reading of the provision. In St. Paul Fire and Marine Ins. Co. v. FDIC, 968 F.2d 695, 698 (8th Cir.1992), the regulatory exclusion policy provided that "there [be] no coverage for any claims ... based upon or attributable to any claim, action or proceeding brought by or on behalf of the [FDIC]." Although the FDIC argued, as it did here, that this language was susceptible to two reasonable alternative constructions, neither of which barred coverage for the FDIC's claim as receiver for the bank, the court concluded that "[w]hen read as a whole, the regulatory exclusion covers any claim, direct or secondary, brought against the directors and officers of the bank by the FDIC in any capacity." Id. at 701. See also, FDIC v. American Cas. Co. of Reading, PA., 975 F.2d 677, 680 (10th Cir.1992).
 
 
 13
 Nor does enforcement of the regulatory exclusion violate federal law or public policy. As this Court has observed,
 
 
 14
 The power to refuse to enforce contracts on the ground of public policy is ... limited to occasions where the contract would violate "some explicit public policy" that is "well defined and dominant, and [which] is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interest.' "
 
 
 15
 St. Paul Mercury Ins. Co. v. Duke University, 849 F.2d 133, 135 (4th Cir.1988), quoting Paperworkers v. Misco, Inc., 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (other citations omitted).
 
 
 16
 The FDIC contends that, by denying the rights that Fidelity possessed prior to receivership, the regulatory exclusion contradicts the broad powers granted to the FDIC as receiver of failed institutions. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides that, as receiver for a failed thrift, the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i).
 
 
 17
 The FDIC's argument is undermined by other provisions of FIRREA, as well as the legislative history. FIRREA originally included a provision allowing the FDIC to require directors' and officers' liability policies to remain in effect despite contrary provisions of the contract. This provision was deleted, however, because the committee believed insurers charged premiums based upon the validity of regulatory exclusion provisions, so that the effect of invalidation would be to increase retroactively the exposure of insurers. See 135 Cong.Rec. S4278 (Apr. 19, 1989) (testimony of Senator Riegle). The Court will not imply a public policy of voiding regulatory exclusions that Congress explicitly refused to enact.
 
 
 18
 As it was finally enacted, the provision of FIRREA dealing with the enforcement powers of receivers specifically states:
 
 
 19
 (12) Authority to Enforce Contracts
 
 
 20
 (A) In General
 
 
 21
 The conservator or receiver may enforce any contract, other than a director's or officer's liability insurance contract or a depository institution bond, entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of a conservator or receiver.
 
 
 22
 (B) Certain Rights not Affected
 
 
 23
 No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a directors or officers liability insurance contract or depository institution bond under other applicable law.
 
 
 24
 12 U.S.C. § 1821(e)(12) (emphasis added). Because FIRREA expressly exempts from enforcement by a receiver directors' and officers' liability policies, the regulatory exclusion provision does not violate any well established or dominant public policy. The FDIC argues that § 1821(e)(12)(B) exhibits Congress' intention not to exempt these contracts per se, but to leave the question to the courts. Even accepting the FDIC's interpretation, however, the fact that Congress is willing to accept the Court's determination demonstrates that no well established or dominant public policy is at stake. In addition, since the enactment of FIRREA, the FDIC's public policy argument has been rejected by several other courts. See, e.g., Fidelity & Deposit Co. of Maryland v. Conner, 973 F.2d 1236 (5th Cir.1992); FDIC v. American Casualty Co. of Reading, PA., 975 F.2d 677 (10th Cir.1992); St. Paul Fire and Marine Ins. Co. v. FDIC, 968 F.2d 695 (8th Cir.1992); American Casualty Co. of Reading, PA. v. FDIC, 944 F.2d 455 (8th Cir.1991).
 
 
 25
 Accordingly, the judgment of the District Court is affirmed.
 
 
 26
 AFFIRMED.