998 F.2d 404
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity, Plaintiff-Appellant,
v.
AMERICAN CASUALTY COMPANY OF READING, PA., Garnishee
Defendant-Appellee.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity, Plaintiff,
v.
Margie ZABORAC, Chester Jacobus, George Baylor, and Harry
Tarter, Defendants-Appellants,
Wayne Grove and Linda Grove, Defendants,
and
American Casualty Company of Reading, Pa., Garnishee
Defendant-Appellee.
 Nos. 91-3597*, 91-3777.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 20, 1992.
Decided June 21, 1993.
 
 Lowell E. Sachnoff (argued), Mark A. Kaprelian, Barry S. Rosen, Patrick M. Collins, Sachnoff & Weaver, Chicago, IL, Catherine Topping, F.D.I.C., Open Bank & Corporate Litigation, Washington, DC, Tim Swain, Donald M. Hartshorn, Swain, Hartshorn & Scott, Peoria, IL, for F.D.I.C.
 Louis C. Roberts, Priscilla A. May, Raymond J. Jast (argued), Joanne Matousek, Peterson & Ross, Chicago, IL, for American Cas. Co.
 Mary W. McDade, Quinn, Johnston, Henderson & Pretorius, Peoria, IL, Joseph Anthony, Paul M. Floyd, Fruth & Anthony, Minneapolis, MN, Ross Morris, Cuba, IL, for Margie Zaborac, Defendant-Appellant Chester Jacobus, George Baylor and Harry Tarter.
 Before KANNE and ROVNER, Circuit Judges, and WILL, Senior District Judge.**
 KANNE, Circuit Judge.
 
 
 1
 The Federal Deposit Insurance Corporation ("FDIC") appeals the district court's grant of summary judgment in favor of American Casualty Company ("ACC"). The district court held i) that the regulatory agency provision in a directors' and officers' liability insurance policy excludes any claim brought by the FDIC, ii) that the insured versus insured exclusion in that contract does not prevent the FDIC from pursuing this action, and iii) the enforcement of these contract provisions does not violate any well established public policy. The district court also denied the FDIC's request, pursuant to Fed.R.Civ.P. 56(f), for additional time to conduct discovery related to the applicability of Ill.Rev.Stat. ch. 73, p 755(2).[1] We affirm.
 
 I. Background
 
 2
 On February 26, 1986, Joe Gibson filed a shareholder derivative action against the then directors of the State Bank of Cuba ("Bank")--Wayne Grove, Linda Grove, Margie Zaborac, George Baylor, Henry Tarter, and Chester Jacobus--alleging that certain lending policies and practices constituted mismanagement of the Bank. When the Commissioner of Banks and Trust Companies of the State of Illinois subsequently determined that the Bank was insolvent and ordered it closed, the FDIC was appointed the Bank's receiver. By virtue of its status as receiver, the FDIC succeeded to the rights of the Bank and its shareholders, one of which is the ability to sue the Bank's directors and officers. The FDIC, in its corporate capacity, purchased from the FDIC, in its receiver capacity, all of the Bank's assets, including any claims against the Bank's directors and officers.
 
 
 3
 As a result of the receivership and the subsequent sale and assumption transaction, the FDIC was substituted as plaintiff in Joe Gibson's shareholder derivative claim and the case was removed to federal court. The FDIC filed a complaint alleging, as did Gibson's complaint, that the directors had negligently mismanaged the Bank. Ultimately, the FDIC obtained a default judgment in the amount of $1,194,822.27 against Wayne and Linda Grove, two of the director defendants.
 
 
 4
 However, the Groves filed for bankruptcy, and the FDIC was only permitted to seek satisfaction of the judgment from the Groves' insurer. In re Grove, 100 B.R. 417 (Bankr.C.D.Ill.1989). The Groves, as well as the other director defendants, were the subject of a directors' and officers' liability insurance contract ("Policy") between the Bank and ACC. The Policy provided coverage for losses stemming from "any actual or alleged error, misleading statement, act or omission, or neglect or breach of duty by the Directors and Officers in the discharge of their duties...."
 
 
 5
 On January 20, 1990, pursuant to Fed.R.Civ.P. 69(a), the FDIC served garnishment summonses and interrogatories on ACC, attempting to obtain Policy proceeds in satisfaction of the judgment against the Groves. In responding to the interrogatories, ACC asserted that the Policy did not cover the FDIC's judgment against the Groves. On November 21, 1990, ACC moved for summary judgment on the grounds that two provisions of the contract excluded coverage, the regulatory agency exclusion and the insured versus insured exclusion.
 
 
 6
 The district court granted ACC's motion for summary judgment. FDIC v. Zaborac, 773 F.Supp. 137 (C.D.Ill.1991). While finding the insured versus insured exclusion inapplicable, the district court held that the regulatory agency exclusion bars coverage of the FDIC's claim, and that the enforcement of that provision does not violate public policy. In addition, the FDIC's Rule 56(f) motion to extend time for discovery was denied. On October 10, 1991, pursuant to Rule 54(b), the district court entered final judgment as to the garnishment proceeding, and the FDIC timely filed its notice of appeal.[2]
 
 II. Analysis
 
 7
 Our review of the district court's grant of summary judgment is de novo. Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). The district court properly enters summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Our standard of review for the district court's decision not to allow additional pre-trial discovery is abuse of discretion." Olive Can Co., Inc. v. Martin, 906 F.2d 1147, 1152 (7th Cir.1990).
 
 
 8
 After examining the language of the Policy and the relevant statutory scheme, we agree with the district court that the regulatory agency exclusion unambiguously bars coverage of the FDIC's action, and that no public policy prevents the enforcement of that exclusion. Consequently, we need not address the scope of the insured versus insured exclusion. We also hold that the district court did not abuse its discretion in denying the FDIC's Rule 56(f) motion.
 
 A. Scope of the Regulatory Agency Exclusion
 
 9
 The regulatory agency exclusion, Endorsement # 7 of the Policy, provides as follows:
 
 
 10
 It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors of [sic] Officers based upon or attributable to: any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator, or otherwise; whether such action is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.
 
 
 11
 In several other circuits, the FDIC has unsuccessfully challenged the application of similar provisions to an action filed by the FDIC against a financial institution's directors or officers. In those cases, the FDIC argued that the policy's language excluding only claims "based on or attributable to" any action brought by or on behalf of the FDIC did not apply to direct actions by the FDIC, but rather excluded only "secondary suits," i.e., third party actions against the insured as a result of an earlier action by the FDIC. See, e.g., FDIC v. American Casualty Co. of Reading, PA., 995 F.2d 471 (4th Cir.1993); FDIC v. American Casualty Co. of Reading, PA., 975 F.2d 677 (10th Cir.1992); St. Paul Fire and Marine Ins. Co. v. FDIC, 968 F.2d 695 (8th Cir.1992). A large majority of courts have rejected this argument for the following reason:
 
 
 12
 Reading the endorsement as a whole, without placing undue emphasis on the words "based upon or attributable to," it is clear that the insured's intent was to exclude coverage for any loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer.
 
 
 13
 Gary v. American Casualty Co. of Reading, PA., 753 F.Supp. 1547, 1550-51 (W.D.Okl.1990). See also, FDIC v. American Casualty Co. of Reading, PA., 995 F.2d at 472-73 (4th Cir.1993); American Casualty Co., 975 F.2d at 680; St. Paul Fire and Marine Ins. Co., 968 F.2d at 701-02. There is little disagreement among courts addressing the issue that if the FDIC had initiated the action against the Groves, the Policy's regulatory agency provision would have excluded coverage.
 
 
 14
 In light of the fact that the district court rejected its secondary suit argument, the FDIC abandons this line of argument on appeal and instead focuses on the regulatory agency provision's language which excludes "any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation." (Emphasis added.) As mentioned, Gibson filed the original shareholder derivative action, and after its appointment as receiver, the FDIC was substituted as the plaintiff and the action was removed to federal court. As such, the FDIC argues that it merely maintained Gibson's suit against the directors, and consequently the default judgment falls outside the language of the provision that excludes actions "brought" by the FDIC. See American Casualty Co. v. FSLIC, 683 F.Supp. 1183 (S.D.Ohio 1988) (holding regulatory agency exclusion was inapplicable to a suit brought by the financial institution and maintained by the agency). At a minimum, the FDIC contends that under Illinois state law the exclusion is ambiguous and should be interpreted favorably for the insured, the FDIC, and strictly against the insurer, ACC. Granite State Ins. Co. v. Degerlia, 925 F.2d 189, 192 (7th Cir.1991).
 
 
 15
 The interpretation of an insurance policy exclusion is a question of law subject to de novo review. Id. at 191. Under Illinois law, which the parties agree we should apply in interpreting the Policy, "[t]he function of the court in construing an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement." de los Reyes v. Travelers Ins. Companies, 135 Ill.2d 353, 142 Ill.Dec. 787, 790, 553 N.E.2d 301, 304 (1990) (citation omitted). If language in the insurance policy is subject to more than one reasonable interpretation, an ambiguity exists which must be resolved in favor of coverage. American Standard Ins. Co. v. Allstate Ins. Co., 210 Ill.App.3d 443, 155 Ill.Dec. 162, 165, 569 N.E.2d 162, 165 (1991); National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 361 (7th Cir.1987). "All the provisions of the insurance contract, rather than an isolated part, should be read in light of each other to determine whether an ambiguity exists." Dash Messenger Service, Inc. v. Hartford Ins. Co. of Ill., 221 Ill.App.3d 1007, 164 Ill.Dec. 313, 316, 582 N.E.2d 1257, 1260 (1991).
 
 
 16
 Courts should neither exercise their inventive powers to create an ambiguity where none exists nor approve of the distortion of language to reach a desired result. Rather, a court should examine the policy as a whole and, to the extent possible, give effect to all provisions and interpret words according to their plain, ordinary, and popular meanings.
 
 
 17
 American Standard Ins., 155 Ill.Dec. at 165, 569 N.E.2d at 165 (citations omitted).
 
 
 18
 After reviewing the Policy as a whole, we agree with the district court that the interpretation advanced by the FDIC is overly technical and unreasonable, and we hold that the regulatory agency provision unambiguously excludes coverage of the FDIC's judgment. In addition to the regulatory agency provision, Endorsement # 8 of the Policy contains an insured versus insured provision which excludes from coverage:
 
 
 19
 Loss ... which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the [Bank] ... except for a shareholder derivative action brought by a shareholder of the Institution other than an Insured.
 
 
 20
 As a former director and officer, Gibson was considered an "insured" under the Policy. Consequently, even though his action was a shareholder derivative suit, if the FDIC had not been substituted as the plaintiff, the insured versus insured provision would have excluded from coverage any damages owed to Gibson by the Groves.[3] In addition, the plain language of Endorsement # 8 would have excluded from coverage an action by the Bank itself against the directors or officers. Finally, as earlier discussed, the regulatory agency provision without question excludes actions filed by the FDIC.
 
 
 21
 We refuse to conclude that, by excluding all losses resulting from claims filed by the FDIC and excluding all losses resulting from shareholder derivative claims made by insured shareholders, the parties intended to create a loophole in the exclusion that provided coverage for shareholder derivative actions filed by an insured shareholder and later maintained by the FDIC. Rather, when read in conjunction with the regulatory provision's latter phrase that excludes losses resulting from all legal actions the FDIC has a right to bring as receiver, the Policy's broad language excluding "any action or proceeding brought by or on behalf of the [FDIC]" can only be interpreted as excluding the default judgment at issue.
 
 
 22
 We need not look any further than the FDIC's own complaint to find the muddying of what the FDIC asserts is a clear distinction under the Policy between the act of "bringing" a suit and the act of "maintaining" a suit. Upon its substitution as plaintiff and the removal of the case to federal court, the FDIC requested leave to file a complaint. The FDIC did not characterize this request as relating to an amended complaint or refer to the pleading that followed as an amended complaint. Rather, in its complaint filed with the district court, the FDIC stated: "Plaintiff FDIC ... brings this action in its corporate capacity." (Emphasis added.) The FDIC's complaint contains none of the allegations necessary to maintain a shareholder derivative action under Fed.R.Civ.P. 23.1, such as the Bank's refusal to file suit. The FDIC complaint also fails to mention several of the specific fraudulent transactions alleged in Gibson's complaint. Thus, while the FDIC may have been, technically speaking, "maintaining" the action, the claim's change of character when the FDIC became a party supports our conclusion that the action falls within those proceedings intended to be excluded by the regulatory agency provision.
 
 B. Public Policy
 
 23
 The FDIC contends that even if the regulatory agency exclusion bars coverage of the current action, the court should not enforce that provision because to do so would violate federal public policy. "The general rule is that competent persons shall have the utmost liberty of contract and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356, 51 S.Ct. 476, 477, 75 L.Ed. 1112 (1931). The power to deny enforcement of contract terms on public policy grounds is restricted to those situations in which the contract would violate "some explicit public policy that is well-defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (citations omitted).
 
 
 24
 According to the FDIC, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (1989) (codified at 12 U.S.C. §§ 1811-1833e), codifies a federal public policy which prohibits the enforcement of the regulatory agency exclusion. The FDIC argues that it brought this action against the Bank through the powers granted by the following section of FIRREA:
 
 
 25
 The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and assets of the institution.
 
 
 26
 12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added). As the receiver, the FDIC possesses all the rights of the Bank's shareholders, including the right to sue directors and officers.[4] Under the Policy, ACC would cover any loss relating to shareholder derivative claims. Thus, the FDIC reasons that when the FDIC obtained a judgment against the Groves in its capacity as shareholder, it should have been able to garnish the proceeds of the Policy to the same extent as could any other uninsured shareholder. According to FDIC, enforcing the regulatory agency exclusion would deprive it of the same rights afforded to shareholders under the Policy, in violation of a clear public policy embodied in § 1821(d)(2)(A)(i).
 
 
 27
 Several other circuits that have addressed this issue have all reached the same conclusion--enforcement of the regulatory agency exclusion does not violate public policy. FDIC v. American Casualty Co. of Reading, PA., --- F.2d ---- (4th Cir.1993); American Casualty Co., 975 F.2d at 681-82; Fidelity & Deposit Co. of Maryland v. Conner, 973 F.2d 1236, 1241-44 (5th Cir.1992); St. Paul Fire and Marine Ins. Co., 968 F.2d at 702. In enacting FIRREA, Congress considered and rejected the inclusion of "a provision that the FDIC could require contracts, including [director's and officer's] liability policies, to remain in effect even if the contract contained a provision terminating the contract upon the appointment of the FDIC as a conservator or receiver." St. Paul Fire and Marine Ins. Co., 968 F.2d at 702 (citing 135 Cong.Rec. S4278 (daily ed. Apr. 19, 1989) (statement of Sen. Riegle)). Instead, Congress enacted the following provision:
 
 
 28
 (A) In general. The conservator or receiver may enforce any contract, other than a director's or officer's liability insurance contract ..., entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of a conservator or receiver.
 
 
 29
 (B) Certain rights not affected. No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a director's or officer's liability insurance contract or depository institution bond under other applicable law.
 
 
 30
 12 U.S.C. § 1821(e)(12) (emphasis added). The enactment of § 1821(e)(12) evidences Congress' intent to remain neutral on regulatory exclusions and completely rebuts the FDIC's argument that the enforcement of such clauses violates a public policy embodied in a different subsection of the same provision, § 1821(d)(2)(A)(i). See American Casualty Co., 975 F.2d at 682 (examining the legislative history of § 1821). Consequently, the district court correctly held that enforcement of the regulatory exclusion does not violate any well-defined public policy.
 
 C. The FDIC's Rule 56(f) Motion
 
 31
 In the form of a footnote in its Memorandum in Opposition to ACC's Motion for Summary Judgment, the FDIC made the following Rule 56(f) motion:
 
 
 32
 Although the FDIC believes that this Court should as a matter of law rule that neither the regulatory exclusion nor the insured v. insured exclusion precludes coverage for its judgment against the Groves, in the alternative, the Court should deny American Casualty's motion and allow further discovery as to whether these exclusions:
 
 
 33
 (1) were contrary to the reasonable expectations of the insured under federal common law; or
 
 
 34
 (2) "unreasonably or deceptively affect the risks that are purported to be assumed by the policy." Ill.Rev.Stat. ch. 73, p 755(2).
 
 
 35
 The district court denied the motion, and on appeal the FDIC challenges the court's finding that Ill.Rev.Stat. ch. 73, p 755(2) does not apply to the Policy.[5] Paragraph 755(2) provides, in part:
 
 
 36
 If the [Illinois] Director [of Insurance] shall find from an examination of any such policy form, rider, endorsement, application blank or other matter incorporated by reference in such policy so filed that it violates any provision of this Code, contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy, he shall order the company or companies issuing such forms to discontinue the use of the same.
 
 
 37
 Id. (emphasis added).
 
 
 38
 The FDIC contends that the district court's denial of the Rule 56(f) motion should be reversed to give it an opportunity to gather and present evidence on the unreasonableness and deceptiveness of the Policy under p 755(2). While this statutory provision formally only provides the Illinois Director of Insurance with power to prevent the issuance of such policies, the FDIC directs us to two cases in which the court partially relied on p 755(2) in refusing to enforce an insurance policy, even though the Director had not taken any action related to the policy. Standard Mutual Insurance Co. v. General Casualty Cos., 171 Ill.App.3d 758, 121 Ill.Dec. 658, 525 N.E.2d 965 appeal denied, 122 Ill.2d 594, 125 Ill.Dec. 237, 530 N.E.2d 265 (1988); Fidelity General Insurance Co. v. Nelsen Steel & Wire Co., 132 Ill.App.2d 635, 270 N.E.2d 616 (1971). In both Standard Mutual and Fidelity, an automobile rental agreement undid virtually all the coverage provided by the car renter's insurance policy incorporated into that agreement. The courts held that this created an ambiguity as to whether the claim at issue fell within the terms of the insurance policy, and that the ambiguity was to be resolved against the insurer. Standard Mutual, 121 Ill.Dec. at 662, 525 N.E.2d at 969; Fidelity, 270 N.E.2d at 620. In addition, the courts held that the combination of the rental agreement and the insurance policy to provide, in effect, no coverage contradicted Illinois public policy which, as represented by p 755(2), prohibits enforcement of deceptive and unreasonable policies. Standard Mutual, 121 Ill.Dec. at 662, 525 N.E.2d at 969; Fidelity, 270 N.E.2d at 620.
 
 
 39
 Even if p 755(2) can be read to establish an Illinois public policy against deceptive and unreasonable insurance policies, that public policy does not prevent the enforcement of the Policy at issue in this case. Unlike the insurance policies in Standard and Fidelity, the regulatory agency exclusion in the Policy unambiguously excluded coverage of the FDIC's action, and the exclusions in the Policy do not have the effect of undoing coverage for virtually all claims. Thus, the Policy on its face is neither unreasonable nor deceptive. Absent an ambiguity in the Policy, Illinois law does not warrant additional discovery into the parties' expectations, and the district court did not abuse its discretion by denying the FDIC's Rule 56(f) motion.
 
 
 40
 Accordingly, the district court's grant of summary judgment in the favor of ACC is AFFIRMED.
 
 
 
 *
 The caption in Cause No. 91-3597 is corrected to reflect the actual case on appeal from the judgment certified by the district court under Fed.R.Civ.P.Rule 54(b)
 
 
 **
 Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Ill.Rev.Stat. ch. 73, p 755(2) was renumbered as 215 ILCS 5/143
 
 
 [2]
 The sole case properly on appeal in this court is Cause No. 91-3597, which concerns a separate garnishment action by the FDIC against ACC, the insurer of the defaulted directors (Wayne and Linda Grove). The district court certified as appealable under Rule 54(b) only the judgment entered in the garnishment proceedings in favor of ACC and against the FDIC. The FDIC's underlying negligence action against the other directors of the Bank remains pending in the district court. Although Margie Zaborac, Chester Jacobus, George Baylor, and Harry Tarter remain defendants in the FDIC's underlying suit, these directors are not parties to the garnishment action initiated by the FDIC against ACC and thus have no standing to appeal the judgment certified by the district court. Accordingly, the appeal of those directors filed in this court as Cause No. 91-3777 is hereby dismissed for want of jurisdiction
 
 
 [3]
 The district court held that the insured versus insured provision did not exclude coverage of the FDIC's claim because the FDIC is representing the interests of all shareholders, not just those of the insured shareholder Gibson
 
 
 [4]
 Under 12 U.S.C. § 1823(d)(3)(A), the FDIC in its corporate capacity receives all the rights it possesses in its capacity as receiver when, as occurred here, FDIC-corporate purchases assets from FDIC-receiver
 
 
 [5]
 In denying the motion, the district court also found that the reasonable expectations doctrine does not exist under either federal common law or Illinois state law, a finding the FDIC does not challenge