958 F.2d 324
 The AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,
Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
Federal Savings and Loan Insurance Corporation
Resolution Fund, Defendant-Appellant,
and
James W. Wilkinson; James H. Burge; Stanley Youngheim;
Walter Ross; David Delana; Mark Franklin; Globe Savings
Bank, F.S.B.; Federal Savings & Loan Insurance Corporation,
in its corporate capacity or its successor, Defendants.
 No. 91-6038.
 United States Court of Appeals,
Tenth Circuit.
 March 12, 1992.
 
 Edward O'Meara (Larry D. Henry, Huffman, Arrington, Kihle, Gaberino & Dunn, A Professional Corp., Tulsa, Okl., and Kenneth Lewis, Trial Atty., Ann S. DuRoss, Asst. Gen. Counsel, and Joan E. Smiley, Sr. Counsel, Federal Deposit Ins. Corp., Washington, D.C., with him on the briefs), Federal Deposit Ins. Corp., Washington, D.C., for defendant-appellant.
 Chris Ballentine (James K. Secrest, II, and Melvin C. Weiman, Secrest & Hill, Tulsa, Okl., with him on the brief), Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, Fla., for plaintiff-appellee.
 Before TACHA, BALDOCK, and EBEL, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Appellant, the Federal Deposit Insurance Corporation (FDIC), appeals the district court's order granting relief to American Casualty Company (ACC) in the form of a declaration that ACC is not obligated to provide liability coverage or to answer any judgment that may be entered against any individual defendants in another suit brought by FDIC, FDIC v. Wilkinson, No. CIV-89-505-A (W.D.Okla. filed Mar. 29, 1989). On appeal, the FDIC argues that the liability policy at issue provides coverage in this case and that the district court erred by holding that the notices received by ACC were insufficient to activate coverage under the policy. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court on different grounds.
 
 BACKGROUND
 
 2
 On December 6, 1982, MGIC Indemnity Corporation issued a directors' and officers' liability insurance policy to Oklahoma Federal Savings and Loan Association (Oklahoma Federal). The policy had an initial coverage period of December 6, 1982 to December 6, 1985. The policy was later assigned to ACC. Before the end of the policy period, ACC elected to cancel the policy; the cancellation was effective March 23, 1985.
 
 
 3
 Clause 2(b) of the policy is entitled "Discovery Clause" and reads in part as follows:
 
 
 4
 If the Insurer shall cancel or refuse to renew this policy, [Oklahoma Federal] shall have the right, upon payment of seventy-five percent (75%) of the annual premium ..., to an extension of the coverage granted by this policy with respect to any claim or claims which shall be made against the Directors or Officers during the period of twelve calendar months after the date of such cancellation or refusal to renew, but only with respect to any Wrongful Act committed before the date of such cancellation or non-renewal.
 
 
 5
 Pursuant to this clause, Oklahoma Federal exercised its right to extend coverage for the twelve calendar months beginning on March 23, 1985.
 
 
 6
 In a letter dated December 2, 1985, Richard Fogg--attorney for Oklahoma Federal--notified ACC of a suit brought by Great Falls Federal Savings and Loan Association (Great Falls) against Oklahoma Federal. Great Falls' complaint, a copy of which was attached to Fogg's letter, alleged that Great Falls had been induced to participate in two loans following their issuance by Oklahoma Federal. The complaint did not name any officer or director of Oklahoma Federal as a defendant.
 
 
 7
 In another letter dated March 8, 1986, Fogg advised ACC of several suits filed against Oklahoma Federal that named both Oklahoma Federal and its chief executive officer as defendants. The letter also stated that "[m]anagement is either aware of, or has been advised of potential claims against [Oklahoma Federal], its Officers and Directors by the following named individuals and organizations." The letter then listed approximately fifty entities and individuals. Finally, the letter stated, "We hereby notify you of these claims for the purpose of establishing coverage under the ... policy."
 
 
 8
 In July 1987, the Federal Home Loan Bank Board determined that Oklahoma Federal was insolvent and authorized its acquisition by another institution. In the acquisition process, Oklahoma Federal's successor assigned all rights to claims against Oklahoma Federal's officers and directors to the Federal Savings and Loan Insurance Corporation (FSLIC).
 
 
 9
 On March 29, 1989, the FSLIC filed suit against several of Oklahoma Federal's officers and directors; the FSLIC alleged that the officers and directors were negligent and breached their fiduciary duties by approving Oklahoma Federal's involvement in a number of bad loans. Among the loans listed in the FSLIC's complaint are two loans that were the subject of the suit filed by Great Falls and seventeen loans related to the individuals and entities listed by Fogg in his March 8, 1986 letter to ACC.
 
 
 10
 Oklahoma Federal's officers and directors made a demand on ACC to defend them pursuant to the liability insurance policy, and this suit by ACC for declaratory relief followed. The FDIC, as successor to the FSLIC, is now a party defendant. The district court held that the notices ACC received during the "discovery period" of March 23, 1985 to March 23, 1986 were not sufficient to trigger coverage under the liability policy.
 
 DISCUSSION
 
 11
 We first address the threshold issue of whether coverage under the policy is triggered by notice of "occurrences" or potential claims given during the "discovery period." We review legal issues of contract interpretation de novo. Great West Cas. Co. v. Canal Ins. Co., 901 F.2d 1525, 1527 (10th Cir.1990). Under Oklahoma law related to insurance contracts, "[t]he terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intentions of the parties as it existed at the time of the contract." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okl.1991). Contract provisions
 
 
 12
 will [not] be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract. If the insurance policy language is doubtful and susceptible to two constructions, without resort to and following application of the rules of construction, then a genuine ambiguity exists, and the contract will be interpreted, consistent with the parties' intentions, most favorably to the insured and against the insurance carrier.
 
 
 13
 Id. at 376-77 (footnotes omitted).
 
 
 14
 In addition to the Discovery Clause, this coverage issue implicates two other policy clauses. Clause 2(a), entitled "Coverage Clause," provides the following:This policy shall cover Loss in respect of any Wrongful Act committed prior to the termination of this policy arising from any claim made (i) within the policy period or (ii) within the discovery period if the right is exercised by [Oklahoma Federal] in accordance with Clause 2(b). For purposes of this Clause 2(a), any claim made subsequent to the policy period as to which notice was given to the Insurer within the policy period as provided in Clause 6(a) or 6(b) shall be treated as a claim made during the policy period.
 
 
 15
 Clause 6(a) is entitled "Notice of Claims" and reads as follows:
 
 
 16
 If during the policy period, [Oklahoma Federal] or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors or Officers, or any of them, responsible for a Wrongful Act; or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a Wrongful Act; and shall, during such period, give written notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.
 
 
 17
 It is undisputed in this case that no "claims" were made or filed between March 23, 1985 and March 23, 1986. Therefore, the precise policy interpretation issue is whether, during the extended twelve-month discovery period, notice of an occurrence or potential claim activated policy coverage. There are no Oklahoma cases that address the issue.
 
 
 18
 ACC argues that although an insured's notice of either an occurrence or actual claim activates coverage if that notice is given during the policy period, Clauses 2(a) and 2(b) require that an actual claim be made during the extended twelve-month discovery period in order to trigger coverage after the policy period ends. The FDIC, on the other hand, argues that Clause 6(a)(ii)--allowing notice of an "occurrence" or potential claim to trigger coverage--applies to the discovery period and that an actual claim need not be made during the discovery period.
 
 
 19
 Clause 6(a) provides for coverage of claims subsequently made if notice is given "of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers." However, the initial phrase of Clause 6(a) contains the language, "If during the policy period"; a subsequent phrase in the clause states that notice of an "occurrence" must be given "during such period." Therefore, notice of an occurrence may trigger coverage for claims subsequently made only if that notice is given "during the policy period."
 
 
 20
 The FDIC argues that the "discovery period" is part of the "policy period" as used in Clause 6(a), or, at least, that there is an ambiguity as to that fact. Clause 2(a), the Coverage Clause, is most indicative of how the term "policy period" in Clause 6(a) should be interpreted. Read alone, Clause 2(a) provides coverage for "any claim made." When referring to "any claim made," the clause clearly creates a dichotomy between the "policy period" on the one hand and the "discovery period" on the other. Within the same clause, in the second sentence, the policy then states that "any claim made subsequent to the policy period as to which notice was given within the policy period as provided in Clause 6(a) or 6(b) shall be treated as a claim made during the policy period." Given the clear dichotomy drawn in Clause 2(a) between the "policy period" and the "discovery period," coupled with reference in the same clause to the nature of notice that can be given during the policy period under Clause 6(a), we cannot conclude that the term "policy period"--as used in both Clause 6(a) and Clause 2(a)--may reasonably be interpreted to encompass the "discovery period." Therefore, we conclude that Clause 6(a)'s phrase "during the policy period" refers only to the period prior to cancellation or non-renewal, not to the extended discovery period. Consequently, notice of an "occurrence" triggers coverage only if that notice is given during the initial policy period prior to the commencement of the extended discovery period.
 
 
 21
 Our reading of Clause 2(b), which refers most directly to the "discovery period," does not alter this conclusion. That clause entitles the insured to extend coverage "with respect to any claims or claims made " for twelve months after cancellation or non-renewal.
 
 
 22
 In McCuen v. American Casualty Co., 946 F.2d 1401 (8th Cir.1991), the Eighth Circuit arrived at the opposite conclusion when interpreting the same policy language based on virtually the same factual situation. The court's analysis centered around the meaning of the phrase "claim or claims made" for which coverage is allowed under Clause 2(b). "Reading the term 'claims' in the context of the whole agreement," the court held "that this term includes a claim arising after termination of the policy as to which notice of the occurrence giving rise to such claim was given during the discovery period." Id. at 1406. We disagree. Such an interpretation of the term "claims" in Clause 2(b) implicitly incorporates Clause 6(a)'s provision allowing notice of an "occurrence" to "be treated as a claim made during the policy year in which such notice is given." The analysis of the term "claims" in McCuen ignores the issue of whether Clause 6(a) applies to notice of an occurrence given during the discovery period. For the reasons stated above, we conclude that Clause 6(a) applies only to notice of an occurrence given prior to cancellation or non-renewal of the original policy.
 
 
 23
 Because we conclude that notice of an occurrence or potential claim given during the discovery period cannot trigger coverage under the policy, we need not decide whether notice given by Oklahoma Federal during the discovery period was sufficient.
 
 
 24
 AFFIRMED.