AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff,

v.

SENTRY FEDERAL SAVINGS BANK, Sentry Savings Bank, F.S.B.; Resolution Trust Corporation; Federal Deposit Insurance Corporation; John Abreau; Hester A. Armstrong; Phillip J. Assiran; Robert D. Aubrey; John T. Aylward; Arthur G. Baronousky; Robert F. Barry; Anita M. Bolduc; Barry E. Burden; Byran E. Berthold; Paul F. Butler; Wendy Buttrick; Jane C. Caron; Judith A. Carpenter; Coleman F. Church, III; Alan A. Collette, Jr.; Henry C. Crapo; Wilton Crosby, Jr.; Steven J. DeCesare; Daniel D. Dodge; Harrison T. Drew, Jr.; John A. Drew; Louis Drinkwine; Edward D. Duffy; Jacqueline Dugener; Richard A. Dusseault; Karen L. Etsell; Robert M.

Fabiano; Walter H. Fish, Jr.; Martin E. Fishkin; John W. Ford; Edison Fuller; Karen L. Fuller; Lois Gagnon; Rita A. Garbitt; Nicoletta Giaterelis; Jean M. Gilbert; Augustine F. Gouveia; Milton M. Gray, Jr.; Joan M. Griffin; Stephanie A. Haddad; Ernest S. Hill; David A. Hirsch; Ellen T. Holmes; Megan Holway; W. Kent Hudson, Jr.; Gary G. Ingram; Rose R. Johnson; Edward Kelly, Jr.; Peter Kropp; Jeanne L. LaBelle; Anthony J. LaRocco; Marcy L. Long; Francis J. Lucey, Jr.; Walter L. Marchant, Jr.; Elizabeth W. McSorley; Martha D. Miles; Joseph C. Murray; Robert W. Nelson; Barret C. Nichols, Jr.; Martin E. Nolan, Jr.; Kurt D. Noyce; Peter Pollock; Thomas B. Powers; Sabra C. Ramsdell; Deborah P. Robbins; Carlene A. Rogean; Richard L. Rowe, Jr.; Deane B. Sawyer; Pauline L. Schafer; John G. Sears; Maureen C. Shannon; John T. Sheedy; Gerald G. Shuck; Mary L. Smith; George G. Sowpel; Eldredge E. Sparrow; Alan D. Stevens; Elizabeth D. Stukas; John P. Stukas; Betty K. Sullivan; Clifford Swanson; Paula J. Sweetman; Matthew J. Sylvia; Diane Thibault; Sabina Troy; John Turner; Diana L. Varjabedian; William A. Welch; Harold F. Whelden; Paul M. White; Winthrop V. Wilbur, Jr.; Bruce Williams; Patricia E. Winters–Andris; Beverly K. Wood; Mary Jane Yeomans; and Dottie Zakarian, Defendants.

Civ. A. Nos. 91–12050–WGY, 91–11016–WGY.

United States District Court, D. Massachusetts.

Oct. 19, 1994.

**52**

John A.D. Gilmore, Hill & Barlow, Boston, MA, for American Cas. Co. of Reading, Pa.

Kevin F. Moloney, Alison L. Berman, Barron & Stadfeld, Boston, MA, Eugene J. Comey, Sean M. Fitzpatrick, Katherine C. Linton, Comey & Boyd, Washington, DC, for Resolution Trust Corp.

Michael B. Stusse, Ardito, Sweeney, Stusse, Robertson & Dupuy, West Yarmouth, MA, for F.D.I.C., Hester A. Armstrong, Alan A. Collette, Jr., Wilton Crosby, Jr., John A. Drew, Robert M. Fabiano, Stephanie A. Haddad, Elizabeth W. McSorley, Martha D. Miles, Carlene A. Rogean, George G. Sowpel, Elizabeth D. Stukas, John P. Stukas.

John T. Aylward, pro se.

Jane C. Caron, pro se.

Elyse D. Cherry, Hale & Dorr, Boston, MA, for Karen L. Etsell.

James H. Wexler, Kotin, Crabtree & Strong, Boston, MA, for Martin E. Fishkin, Barrett C. Nichols, Jr., William A. Welch.

Philip M. Boudreau, Hyannis, MA, for Edward Kelly, Jr.

Deane B. Sawyer, pro se.

H. Alfred Yonce, Orleans, MA, for Mary L. Smith.

Robert S. Troy, Law Office of Robert S. Troy, Sandwich, MA, for Sabina Troy.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

I.

This declaratory judgment action arises out of a directors' and officers' liability insurance policy (the "Policy") issued by American Casualty Company of Reading, Pennsylvania ("American Casualty") to Sentry Federal Savings Bank ("Sentry"). The relevant undisputed background is as follows.

On September 21, 1990, the Office of Thrift Supervision ("OTS") placed Sentry in receivership/de novo conservatorship and named the Resolution Trust Corporation ("RTC") as the conservator. On March 14, 1991, an action was filed in the Massachusetts Superior Court sitting in and for the County of Barnstable, *Robert N. Greenfield, et al. v. Gerald G. Shuck, et al.*, No. 91–355 (Mass. Sup.Ct., Barnstable, filed March 14, 1991). The Massachusetts action was brought by purchasers of subordinated capital notes ("Securities") of Sentry against executive officers, directors, and branch managers of Sentry. In April, 1991 the action was re-

moved to this Court. On July 24, 1991, the RTC's Motion to Intervene in the *Greenfield* action was allowed. Greenfield's Third Substitute Complaint alleges the following claims: fraud/deceit (Count I); aiding and abetting harm to third parties (Count II); negligent misrepresentation (Count III); breach of fiduciary duty (Count IV); and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (Count V).[1] Although not contained in the Third Substitute Complaint, Greenfield also brings a claim for violations of federal securities law, namely, The Securities Exchange Act of 1934, § 10(b) and SEC Rule 10b–5 (Count VI). *See Greenfield v. Shuck,* 856 F.Supp. 705 (D.Mass.1994) (allowing motion to reinstate security claim).

On August 2, 1991, American Casualty filed the instant action. A motion to amend the Complaint was allowed by this Court on February 23, 1992. The Amended Complaint requests that this Court issue a declaratory judgment that there is no coverage available to the defendants[2] under the Policy. As grounds therefor, American Casualty alleges that Endorsement No. 16 of the Policy, "Amendment of Merger/Consolidation Clause," provides that the Policy terminated on September 21, 1990 and that the Policy provides no coverage for any action brought after that date (Count I); Endorsement No. 12 of the Policy, "Insured vs. Insured" excludes coverage for any action brought against the directors or officers of Sentry by the RTC or FDIC as the "Insured" (Count II); Endorsement No. 8 of the Policy, "Limitation of Coverage," excludes coverage for

actions brought by the FDIC or other regulatory agency, including the RTC (Count III); and the Policy contained "Notice of Claims" provisions at parts 6(a) and (b) and an "Extensions" provision at part 2 that the insured failed to perform (Count IV).

American Casualty has moved for summary judgment on all counts of the Amended Complaint. The RTC, Shuck[3], and Fishkin[4] have opposed American Casualty's Motion. The RTC has moved for partial summary judgment on the issues of timeliness and sufficiency of notice (Count IV). Shuck and Fishkin have moved for summary judgment on all four counts of American Casualty's Amended Complaint.[5]

On July 21, 1992, this Court held a hearing regarding the above motions. The motion by the RTC was allowed as to Count IV; the motions by Shuck and Fishkin were taken under advisement on Counts I and III and allowed on Counts II and IV; accordingly, the motion by American Casualty was taken under advisement on Counts I and III and denied on Counts II and IV. The Court will now explain its rulings on Counts II and IV and address Counts I and III.

## II.

### (A) *The Regulatory Exclusion*

American Casualty argues that Endorsement No. 8, the Regulatory Endorsement (titled "Limitation of Coverage"), excludes from coverage all loss arising out of any claims which may be brought against directors or officers of Sentry by the RTC or

---

1. The plaintiffs in the *Greenfield* action, numbering approximately two hundred, have also filed a Third Substitute Class Action Complaint and Jury Claim. In an order entered this day, this Court denied the motion for class certification. *Greenfield v. Shuck,* 867 F.Supp. 62 (D.Mass. 1994).

2. The defendants in this case are Sentry Federal Savings Bank, Sentry Savings Bank F.S.B. (both referred to as "Sentry"); Resolution Trust Corporation; Federal Deposit Insurance Corporation; and a number of directors and officers of Sentry.

3. The defendants Gerald G. Shuck, Richard L. Rowe, Jr., Howard F. Whelden, Paul F. Butler,

Louis P. Drinkwine, Bruce C. William, Paul M. White, Anita M. Bolduc, Rita A. Garbitt, Beverly Wood, and Judith Carpenter will be referred to collectively as "Shuck."

4. The defendants Martin E. Fishkin, William A. Welch, Diana Varjabedian, and Barret C. Nichols, Jr. will be referred to collectively as "Fishkin."

5. Although Fishkin has styled his motion as one for partial summary judgment, he has adopted the motions and memoranda of both the RTC and Shuck. Since Shuck has moved for summary judgment on all four counts, this Court will treat Fishkin's motion as one for summary judgment on all four counts as well.

any other regulatory agency. The Endorsement provides:

> ... [T]he Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:
>
> > any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency. . . .

(Appendix to Plaintiff's Motion for Summary Judgment, Exhibit A.)

The RTC argues that enforcement of the Regulatory Exclusion would directly contravene federal statutory law. The RTC succeeds to

> all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989). Since depositors and shareholders have a right to bring derivative claims against directors and officers for mismanagement, the RTC succeeds to those rights. RTC asserts that American Casualty and Sentry should not be able privately to contract to eliminate the RTC's statutory rights.

The RTC also argues that the Regulatory Exclusion should not be enforced because to do so would significantly impair important public policies. "[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery*, 480 U.S. 386, 392, 107 S.Ct. 1187, 1191, 94 L.Ed.2d 405 (1987). The public policy the RTC identifies as being violated is the above cited grant of "rights titles, powers and privileges" of the failed institution and the RTC's broad powers to liquidate or otherwise resolve failed banks in furtherance of the vital public interest in a safe and stable banking system.

Finally, the RTC argues that the Regulatory Exclusion is ambiguous because it could be interpreted as (1) precluding coverage only for secondary claims[6] and not for direct claims by the RTC and (2) applying only to regulatory actions by the RTC and not to the assertion of shareholder or depositor claims.

The RTC cites eight federal district courts which have refused to enforce a regulatory exclusion similar or identical to the one at issue. American Casualty cites ten federal district courts and two circuit courts that have reached the opposite conclusion.[7] The First Circuit has not addressed the issue. At the urging of this Court, the parties have submitted memoranda addressing the applicability of the doctrine of collateral estoppel or issue preclusion to the issues under consideration.[8]

### 1. *Issue Preclusion*

■ American Casualty argues that the doctrine of issue preclusion may estop the RTC from asserting that the Regulatory Exclusion is ambiguous or barred by public policy because those matters have already been litigated and decided against the RTC in *American Cas. Co. v. Baker*, 758 F.Supp. 1340 (C.D.Cal.1991). American Casualty asks this Court to apply the "last in time" rule and bind the RTC with the most recent case that satisfies the elements of issue pre-

---

**6.** Secondary claims are "suits brought by third parties against the insured following an initial suit by the RTC." *American Cas. Co. v. Baker*, 758 F.Supp. 1340, 1344 (C.D.Cal.1991). For example, the RTC brings a claim against a former bank customer and the former bank customer then brings a claim against a former officer or director. *Id.*

**7.** For a listing of these cases, see RTC Memorandum, Docket No. 135, at p. 8. To American

Casualty's arsenal, I would also add *St. Paul Fire and Marine Ins. Co. v. FDIC*, 968 F.2d 695 (8th Cir.1992); *FDIC v. American Casualty Co.*, 975 F.2d 677 (10th Cir.1992); and *FSLIC v. Shelton*, 789 F.Supp. 1355 (M.D.La.1992).

**8.** Of the four counts in the Amended Complaint, the only one either party thinks might possibly be bound by issue preclusion is Count III, the regulatory exclusion.

clusion. The RTC asserts that issue preclusion is inapplicable to the present case because the necessary elements set out by the United States Supreme Court and First Circuit have not been satisfied.

■ The United States Supreme Court has stated the general principle of issue preclusion as follows:

> [A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*United States v. Moser*, 266 U.S. 236, 241, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). The purpose of issue preclusion is to protect litigants from the burden of relitigating an identical issue with the same party or a privy and to promote judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1978). In the instant case, American Casualty has brought an action for declaratory judgment to deny insurance coverage to the RTC and now seeks to assert offensive collateral estoppel to prevent the RTC from asserting that the regulatory exclusion does not deny coverage.[9]

The First Circuit has identified five essential elements which must be present to assert issue preclusion:

> 1. the determination ... must be over an issue which was actually litigated in the first forum; 2. that determination must result in a valid and final judgment; 3. the determination must be essential to the judgment which is rendered by, and in, the first forum; 4. the issue before the second forum must be the same as the one in the first forum; and 5. the parties in the second action must be the same as those in the first.

*NLRB v. Donna–Lee Sportswear Co., Inc.*, 836 F.2d 31, 34 (1st Cir.1987). American Casualty asserts that *Baker* satisfies the above test.[10] This Court finds, however, that *Baker* only satisfies four of the five elements—the second has not been satisfied.

The first element has been satisfied. The RTC cannot reasonably assert that the issue of the regulatory exclusion was not "actually litigated" in *Baker*. The issue was clearly the subject of the insurer's motion for summary judgment and it was fully considered by the court.

The third element has also been met. There can be no dispute that the determination reached by the *Baker* court concerning the regulatory exclusion was essential to its judgment—it was the main issue in the opinion.

The fourth element has been satisfied. The issue before this Court it precisely the same as the issue before the *Baker* court, i.e., the validity and enforceability of the Regula-

---

9. It is clear that issue preclusion can be invoked against the government. *See, e.g., United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174, 104 S.Ct. 575, 580, 78 L.Ed.2d 388 (1984); *Montana v. United States*, 440 U.S. 147, 164, 99 S.Ct. 970, 979, 59 L.Ed.2d 210 (1979). The party asserting issue preclusion, however, must have been a party in the earlier litigation. *United States v. Mendoza*, 464 U.S. 154, 162–64, 104 S.Ct. 568, 573–74, 78 L.Ed.2d 379 (1984). In other words, unlike private litigants, nonmutual issue preclusion is unavailable against the government. *Id.* The only cases that American Casualty may urge upon this Court, therefore, are ones in which they have been a party.

10. Actually, American Casualty cites the test in *Kalman v. Berlyn Corp.*, 614 F.Supp. 1327, 1329–

30 (D.Mass.1985). This test only enumerates four essential elements of collateral estoppel. *Kalman* does not list the requirement that a valid and final judgment must result from the first litigation. In *Kalman*, however, the first litigation was a valid and final judgment since the decision at issue had been affirmed by the Court of Appeals for the Federal Circuit. *Kalman*, 614 F.Supp. at 1329. There can be no dispute that a valid and final judgment is an essential prerequisite to the invocation of collateral estoppel. *See e.g. United States v. 21 Approximately 180 k.g. Bulk Metal Drums*, 761 F.Supp. 180, 184 (D.Me. 1991) (citing *Donna–Lee Sportswear*, 836 F.2d at 34); *In re Katz*, 20 B.R. 394, 397 (Bankr.D.Mass. 1982). The definition of a valid and final judgment, however, is less apparent. *See infra.*

tory Exclusion. The regulatory exclusion at issue in *Baker* contained exactly the same language as the instant policy. The RTC asserts that since the insurance contracts are not one and the same, factual distinctions may exist that have "legal significance," thereby preventing the issues from being the same. *Compare Stauffer Chem. Co.,* 464 U.S. at 172, 104 S.Ct. at 579 (factual differences in two different inspections of Stauffer chemical plants had no legal significance). The RTC asserts that since a contract must be viewed as a whole, it is improper to conclude that a regulatory exclusion in one contract has the same meaning as it does in another, where other clauses may be different. The RTC also asserts that contracts formed in different states may be interpreted differently under applicable law. This Court acknowledges that these are valid considerations. In the instant case, however, the RTC has not illustrated how these factors would change the analysis. Given the similarities between the two contracts at issue and the reasoning applied by the *Baker* court, this Court concludes that none of the differences posited have any "legal significance."

The fifth element has been satisfied. The parties are the same in both *Baker* and the instant case. Both cases involved American Casualty and the RTC. Although the RTC was acting as receiver for two different financial institutions, that fact does not affect the analysis of the regulatory exclusion.[11]

■ The second essential prerequisite to the use of issue preclusion is that a valid and final judgment in the earlier case must have entered. *Donna–Lee Sportswear,* 836 F.2d at 33; Restatement of Judgments (Second), § 27 at 250. In general, partial summary judgment is not a valid final judgment and thus cannot serve as a basis for issue preclu-

sion. The definition of a valid and final judgment for collateral estoppel purposes, however, is unclear. In fact, " 'finality' may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied sub nom., Dawson v. Lummus Co.,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). The trend seems to be toward expanding the notion of finality for the purposes of issue preclusion. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4434 (1981 & Supp.1991). In *O'Reilly v. Malon,* 747 F.2d 820, 823 (1st Cir.1984), the First Circuit granted preclusive effect to a decision that had been affirmed by the First Circuit before final judgment had entered in the district court. Since the parties had a full and fair opportunity to litigate and the opportunity for appellate review, the court reasoned that the absence of a Fed.R.Civ.P. 54(b) entry of separate judgment should not prevent the application of issue preclusion under the circumstances. *Id.*

Most courts that have expanded the notion of finality have done so only where there has been an opportunity for appellate review. Although the *Baker* decision conclusively decided the issue of the regulatory exclusion for that case, no final judgment entered and there has been no opportunity for appeal. For this reason, this Court declines to treat it as a final judgment. *See Avondale Shipyds., Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1272 (5th Cir.1986) (an order granting partial summary judgment has no collateral estoppel effect). *Cf. Tausevich v. Board of Appeals of Stoughton,* 402 Mass. 146, 149, 521 N.E.2d 385 (1988) (partial summary

---

11. Although not applicable here, the RTC also asserts that it cannot be considered to be the same party as the FDIC or FSLIC with regard to the preclusive effect of other cases. While not ruling on this issue, this Court disagrees. The same party, for collateral estoppel purposes, includes the "privies" of the party. Although such terminology is no longer current, *see Montana v. United States,* 440 U.S. 147, 155 n. 5, 99 S.Ct. 970, 974 n. 5, 59 L.Ed.2d 210 (1979), the determining factor is whether the relationship be-

tween two parties is "sufficiently close" so as to bind them both to a determination at which only one was present. *Donna–Lee Sportswear,* 836 F.2d at 34–35. Given the close relationship between the RTC, FDIC, and FSLIC, and the common interests and roles they play, they are sufficiently related for a determination of the regulatory exclusion. *See Baker,* 758 F.Supp. at 1346 (discussing similarities and overlapping functions of these agencies).

judgment has no preclusive effect where there was no appealable judgment and earlier action was dismissed with prejudice after settlement). *But see Alyeska Pipeline Service Co. v. United States,* 688 F.2d 765, 770–71 (Ct.Cl.1982) (partial summary judgment given preclusive effect where court thought it had disposed of all parts of the claim on summary judgment).

■ Even if this Court were to treat the *Baker* decision as a final judgment, issue preclusion would be inappropriate. The Supreme Court has stated that the doctrine of collateral estoppel does not apply to " 'unmixed questions of law' in successive actions involving substantially unrelated claims." *Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) (quoting *United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 [1924] ). In other words, "when issues of law arise in successive actions involving unrelated subject matter, preclusion may be inappropriate." *Montana,* 440 U.S. at 162, 99 S.Ct. at 978. The Supreme Court has acknowledged, however, that there is considerable confusion as to the correct application of this exception. *See Stauffer Chem. Co.,* 464 U.S. at 170–71, 104 S.Ct. at 578–79 (admitting uncertainty about its application); *Montana,* 440 U.S. at 163, 99 S.Ct. at 978–79 (the scope of the *Moser* exception is "difficult to delineate"). The RTC argues that since the instant issue is purely legal, and the subject matter is unrelated, the *Moser* exception applies.

This Court agrees with the RTC that the inquiry is purely legal. The only questions to be determined are whether the Regulatory Exclusion is ambiguous on its face or whether its enforcement violated public policy. The Supreme Court has stated that the doctrine of issue preclusion can apply to preclude relitigation of both issues of fact and law. *Stauffer Chem. Co.,* 464 U.S. at 170–71, 104 S.Ct. at 578–79. The determining factor, therefore, is whether the subject matter in the two suits is related.

In *Montana,* the Supreme Court declined to invoke the *Moser* exception because the "legal 'demands' of [the second] litigation [were] closely aligned in time and subject matter to those in [the first]." *Montana,* 440 U.S. at 162, 99 S.Ct. at 978 (both suits involved a challenge to the State of Montana's gross receipts tax). In *Stauffer,* the court again found the exception inapplicable because the facts of the first case were "virtually identical" to the facts of the second case. *Stauffer Chem. Co.,* 464 U.S. at 172, 104 S.Ct. at 579 (attempted inspections of two different Stauffer chemical plants within two weeks time).

The Regulatory Exclusion in the instant case is identical to the one at issue in *Baker.* The arguments as to its ambiguity and invalidity as violative of public policy are identical. The issues are close in time. All these factors favor the inapplicability of the *Moser* exception because they tend to show the relatedness of the claims. Nevertheless, the claim in *Baker* involved insurance policies entered into between American Casualty and Pacific Savings Bank. The instant claim involves an insurance policy entered into by American Casualty and Old Sentry. They are different policies, even though they have identical terms. These claims do not have the same relatedness that is found in other cases where the *Moser* exception was held inapplicable. *Compare O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1069 (3d Cir. 1991) (exception to collateral estoppel is inapplicable where suit arose out of same set of operative facts, i.e., same automobile accident). *But see Stauffer,* 464 U.S. at 172 n. 5, 104 S.Ct. at 579 n. 5 (rejecting the government's attempt to broaden the *Moser* exception to include all claims that do not arise out of the same facts or transaction).

This Court rules that the doctrine of issue preclusion is inappropriate to bar relitigation of the issue of the regulatory exclusion in the instant case because there has been no valid final judgment in *Baker,* and because of the *Moser* exception.

■ This ruling has no practical effect on the instant case, however. Although the two claims are different enough to preclude the use of collateral estoppel, they are similar enough to apply the same analysis. This Court finds the reasoning in *Baker* determinative and adopts it completely.

### 2. *The Merits of the Regulatory Exclusion*

#### (a) *Public Policy*

The RTC advanced the same public policy argument in *Baker* as it does before this Court. *Baker* disposed of it as follows. " '[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests....' " *Baker,* 758 F.Supp. at 1346 (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 [1945] ). The court reasoned that there is no public policy prohibiting private parties from contracting to deny the RTC insurance coverage in this situation. In fact, Congress specifically provided that the "receiver may enforce any contract, *other than a director's or officer's liability insurance contract* or a depository interest bond, notwithstanding any provision of the contract providing for termination . . . of rights upon . . . insolvency or the appointment of a conservator or receiver." 12 U.S.C. § 1821(e)(12)(A) (emphasis added). The court ruled that this statute meant that " 'the dominant public policy exposed by this review is that the parties' freedom to contract not be disturbed.' " *Baker,* 758 F.Supp. at 1346 (quoting *FDIC v. Aetna Cas. and Sur. Co.,* 903 F.2d 1073 [6th Cir.1990] ). *See also FDIC v. American Cas. Co.,* 995 F.2d 471, 473 (4th Cir.1993); *Fidelity & Deposit Co. of Md. v. Conner,* 973 F.2d 1236 (5th Cir.1992); *FDIC v. American Cas. Co.,* 998 F.2d 404, 407 (7th Cir.1993); *St. Paul Fire and Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir.1992); *FDIC v. American Cas. Co.,* 975 F.2d 677, 680–83 (10th Cir. 1992); *American Cas. Co. v. RTC,* 839 F.Supp. 282 (D.N.J.1993); *Bartley v. National Union Fire Ins. Co.,* 824 F.Supp. 624 (N.D.Tex.1992); *American Cas. Co. v. Kirchner,* No. 91–C–0797–C, 1992 WL 300843 (W.D.Wis. May 22, 1992), *aff'd,* 16 F.3d 152 (7th Cir.1994).

Since Congress does not require banks to obtain director and officer liability insurance, *see* 12 C.F.R. § 7.5217(d), it does not thwart the RTC's statutory mandate to rule that none exists here. Also, legislative history shows that Congress has considered the issue of the Regulatory Exclusion and decided to allow case law to develop the issue rather than state that such exclusions violate public policy. *Baker,* 758 F.Supp. at 1347; *see also* American Casualty Memorandum at 8–10.

For the above reasons, this Court rules that the Regulatory Exclusion does not violate public policy.

#### (b) *Ambiguity*

Where a provision of an insurance policy is ambiguous, it must be interpreted in favor of the insured so as to provide coverage. *Hazen Paper Co. v. U.S. Fidelity & Guar. Co.,* 407 Mass. 689, 699, 555 N.E.2d 576 (1990). Some courts have held that the language in the Regulatory Exclusion precluding coverage for claims made against directors or officers "based upon or attributable to" any action brought by the FDIC or any other regulatory agency is ambiguous. *See, e.g., FSLIC v. Mmahat,* C.A. No. 86–5160, 1988 WL 19304 (E.D.La. March 3, 1988); *see also* RTC Memorandum in Opposition at 10 n. 11. The alleged ambiguity in this language is that it could be read to mean that the preclusion of coverage only applies to secondary suits.

This Court, however, agrees with *Baker* and the other courts that have held that such a reading of these words is strained.[12] It is clear to this Court that this Endorsement intended to exclude coverage of *any* claims brought by the FDIC (or RTC) in any capacity.

#### (c) *Regulatory Agency*

The RTC also argues that the exclusion does not apply to it because it is not specifically named in the endorsement and it is not a regulatory agency. The *Baker* court again convincingly disposes of this argument by demonstrating that "Congress has swept the RTC into a regulatory agency category." *Baker,* 758 F.Supp. at 1347. Moreover, the RTC has been deemed a regulatory agency in other settings. *Id.*

---

**12.** The RTC suggests that since some courts have found the language ambiguous and others have not that it is *per se* ambiguous. This reasoning is unpersuasive—each court must make its own determination.

For the foregoing reasons, this Court rules that the Regulatory Exclusion precludes insurance coverage for the RTC's action.[13] *See also FDIC v. American Cas. Co.,* 975 F.2d 677 (10th Cir.1992).

**(B)** *The Insured vs. Insured Exclusion*

 The Insured vs. Insured Exclusion, Endorsement No. 12, states:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, as defined in clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter called "Institution"), except for a shareholders derivative action brought by a shareholder of the Institution other than the Insured.

(Appendix to Plaintiff's Motion for Summary Judgment, Exhibit A.) In order for the exclusion to apply, the claim must be made against officers or directors and must be brought by another officer or director or by the Institution itself. It does not matter what *type* of claim is brought, but *who* asserts the claim. Since the RTC is unambiguously not the Institution referred to in this exclusion, the exclusion does not apply.

Clause 1(a) does not provide a definition of Institution. It merely provides a definition of Association. Further, an amendment provided that the term association was to be replaced by the term "bank." It is undisputed that the Institution referred to is Sentry Bank.

The crux of the dispute is this: when the RTC is asserting the claims of the Bank, does it merely "stand in the shoes" of the bank subject to the same limitations that would apply to the bank, *see FDIC v. American Cas. Co.,* 975 F.2d 677, 681–82 (10th Cir.1992); *Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469, 482 (C.D.Cal.1987); *Gary v. American Cas. Co.,* 753 F.Supp. 1547, 1555 (W.D.Okla.1990), or is it different from the bank because it represents shareholders and creditors of the bank and is not the Insured

referred to in the exclusion, *see Baker,* 758 F.Supp. at 1349; *American Casualty Co. v. FDIC,* 791 F.Supp. 276 (W.D.Okla.1992); *American Cas. Co. v. FDIC,* No. CIV. 86–4018, 1990 WL 66505, at *11 (N.D. Iowa Feb. 26, 1990), *aff'd in relevant part and rev'd in part,* 944 F.2d 455 (8th Cir.1991); *Branning v. CNA Ins. Cos.,* 721 F.Supp. 1180, 1184 (W.D.Wash.1989).

"The weight of opinions concerning 'insured vs. insured' exclusions in the receivership context side with the *American Casualty* cases and the *Branning* decision by allowing coverage when receivers sue the former directors and officers of a failed institution." Melanie K. Palmore, *"Insured vs. Insured" Exclusions in Director and Officer Liability Insurance Policies: Is Coverage Available When Chapter 11 Trustees and Debtors-in-Possession Sue Former Directors and Officers?,* 9 Bankr.Dev.J. 101, 118 (1992). In fact, the only two cases that American Casualty relies on in its memoranda are *Mt. Hawley* and *Gary.*

*Baker* distinguished itself from *Mt. Hawley* because the language of the exclusion was different. In *Mt. Hawley,* the exclusion "expressly named the insured's assigns and expressly excluded the shareholders derivative suits exception.... Here, the exclusion excludes coverage only for claims made against insured directors and officers that are asserted by 'any other Director or Officer or by the Institution ..., except for a shareholders derivative action brought by a shareholder of the Institution.'" *Baker,* 758 F.Supp. at 1349. The Endorsement in the instant case is like that in *Baker,* not that in *Mt. Hawley.* Since shareholders' derivative suits are not prohibited, the RTC should not be barred from coverage (there is no dispute that it has priority to assert shareholder derivative actions). Likewise, *Baker* distinguishes itself from *Gary.* There, the FDIC in its corporate capacity brought suit against the failed bank's officers and directors. Since the FDIC was in its corporate role, it was acting *only* on behalf of the bank, and not on behalf

---

**13.** While not a factor in the Court's analysis, it is interesting to note that the RTC has acknowledged that the tide of judicial opinions is against it and has recommended the enactment of corrective legislation. (*See* Appendix to the Plaintiff's Motion, Exhibit Q at 21.)

of any shareholders or creditors. *Id.* at 1348–49 (citing *Gary* at 1555).

Most courts agree with Judge Schwarzer that "[t]he obvious intent behind the 'insured v. insured' exclusion is to protect [American Casualty] from collusive suits among [Sentry] and its directors and officers." *Fidelity and Deposit Co. of Md. v. Zandstra,* 756 F.Supp. 429, 431 (N.D.Cal.1990). Such a concern is not implicated here, where the RTC is an adverse party, not in collusion with the directors and officers of Sentry.[14]

For the above reasons, this Court rules that the Insured vs. Insured Exclusion does not bar insurance coverage for claims asserted against directors and officers by the RTC.

### (C) *Notice of Claim*

#### 1. *Sufficiency of Original Notice*

■ The Policy at issue here had an effective period of July 29, 1989—July 29, 1990. Pursuant to endorsement No. 25, extended discovery was exercised for a period of ninety (90) days ending October 27, 1990 with respect to any wrongful act committed before July 29, 1990.[15] On July 25, 1990, Sentry advised American Casualty of potential claims involving malfeasance by directors and officers of Sentry. (*See* Appendix to Plaintiff's Memorandum, Exhibit C.) Although plainly within the policy period, American Casualty argues such notice was insufficient.

American Casualty relies on *American Cas. Co. v. Wilkinson,* No. CIV–89–1609–W, 1990 WL 302175 (W.D.Okla. Dec. 21, 1990), *aff'd sub nom., American Cas. Co. v. FDIC,* 958 F.2d 324 (10th Cir.1992) to support its claim that Sentry's notice was insufficient. In *Wilkinson* the court held that a bank's submission of a "laundry list" of fifty potential claimants without explanation of the surrounding circumstances or alleged Wrongful Act did not constitute adequate notice. In the instant case, however, Sentry's notice was much more detailed and described the potential defendants, plaintiffs, and circumstances from which claims may arise. For this reason, this Court holds, as it ruled at the hearing, that the notice was both sufficient and timely.

#### 2. *Timeliness of Additional Notices* [16]

■ Old Sentry submitted an additional Notice of Claim to American Casualty on August 29, 1990 and the RTC submitted a Notice of Claim on October 22, 1990. American Casualty argues that these notices were untimely because they occurred during the discovery period. American Casualty argues that coverage is only available for "claims" made during the discovery period, not "notice of claims." This argument is unpersuasive.

■ In *McCuen v. American Cas. Co.,* 946 F.2d 1401 (8th Cir.1991), the Eighth Circuit construed the identical language in another American Casualty policy. Clause 2(a) provides that any "claim" made subsequent to the Policy Period, if notice was given as provided in Clause 6(a), "shall be treated as a *claim* made during the policy period." *Id.* at 1406. The Discovery Clause 2(b) states that "claims" made during the discovery period are covered. This Court agrees with *McCuen* that the term "claim" when read in the context of the whole agreement, includes a claim arising after termination of the policy as to which notice of the occurrence giving rise to such claim was given during the discovery period. *Id.* at 1406. According to this analysis, the August notice, given during the discovery period, was sufficient (regardless of any interpretation of the merger/consolidation clause).

---

14. Another argument in support of the RTC's position is the mere existence of the Regulatory Exclusion. If the parties had intended to exclude coverage when the RTC and FDIC sued directors and officers, why was that language not specifically used as in the Regulatory Exclusion?

15. American Casualty argues that the discovery period ended September 21, 1990, when the RTC was appointed receiver.

16. For the sake of completeness, the Court advances this dicta as an alternative rationale to the ruling in Part D, *infra,* dealing with American Casualty's argument that the Merger/Consolidation Clause terminated the discovery period on September 21, 1990—an additional reason, it says, to invalidate the October notice.

In *American Cas. Co. v. FDIC*, 958 F.2d 324 (10th Cir.1992), the 10th Circuit reached a different conclusion under a slightly different policy. The Tenth Circuit held that the policy before it clearly distinguished between the policy period and the discovery period and that while coverage was available for *claims* made during the discovery period, coverage was not available where *notice* only was given in the discovery period. *See id.* at 327–28.

The facts in the instant case are distinguishable from those before the Tenth Circuit. Endorsement No. 17 to the policy before this Court provides that "If the extended discovery period is exercised ... such extension shall be part of and not in addition to the last Policy Year." This amendment blurs the distinction between policy year, policy period, and discovery period on which the Tenth Circuit convincingly rested its decision.

Reading the Policy as American Casualty suggests limits the function of the discovery period to providing an ability to bring claims as to which notice was previously given during the policy period—a right already secured by the Policy. Like a statute, a contract is not to be construed to render any of its terms meaningless or surplusage. *Jimenez v. Peninsular & Oriental Steam Nav. Co.*, 974 F.2d 221 (1st Cir.1992).

For the foregoing reasons, this Court rules that the August 29, 1990 notice was sufficient and timely.[17]

### (D) The Merger and Consolidation Clause

■ Endorsement No. 16, the Amendment of Merger/Consolidation Clause states, in relevant part:

... if the [bank] is merged into, consolidated with or substantially all of its assets are sold to any other corporation, after the effective date of this Policy, written notice thereof shall be given to the Insurer as soon as practicable together with such information as the Insurer may request and the [Bank] shall pay any additional premium required if the Insurer, at its option, agrees to insure the surviving entity ... if after the corporate reorganization, the [Bank] is not actively engaged in making loans and receiving savings deposits, coverage shall cease as of the date of the corporate reorganization and the Insured shall not be entitled to obtain extended coverage provided for in Clause 2(B). The foregoing applies whether the corporate reorganization is voluntary or involuntary.

(Appendix to Plaintiff's Memorandum, Exhibit A.) It is undisputed that the Office of Thrift Supervision (OTS) appointed the RTC as conservator for Sentry on September 21, 1990. American Casualty argues that upon that occurrence, the Bank was "merged into, consolidated with or substantially all its assets [were] sold to" the RTC and that Sentry was "not actively engaged in making loans and receiving savings deposits." American Casualty argues, therefore, that coverage ceased on September 21, 1990.

In support of its position, American Casualty relies on *FDIC v. Aetna Cas. and Sur. Co.*, 903 F.2d 1073 (6th Cir.1990) and *Sharp v. FSLIC*, 858 F.2d 1042 (5th Cir., 1988). Both cases held that insurance policies known as bankers' "blanket bonds" terminated upon appointment of the FDIC as receiver of a failed bank. *Aetna*, 903 F.2d at 1078–79; *Sharp*, 858 F.2d at 1046. Both cases found that the plain, unambiguous meaning of the exclusions applied and were not void by general public policy concerns.[18] In the instant case, however, the language of the exclusion is very different than in *Sharp* and *Aetna*. In those cases the language plainly stated that coverage terminates "*immediate-*

---

17. In view of the adequacy of the first two notices, the timeliness of the RTC notice in October is immaterial. Fed.R.Evid. 401. The Court expresses no opinion thereon.

18. As discussed above with reference to the Regulatory Exclusion, "[p]ublic policy is to be ascertained by reference to laws and legal precedents, and not from general considerations of supposed public interests." *Aetna*, 903 F.2d at 1077 (quot-

ing *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 [1945]). The court disapproved of the reasoning in *FSLIC v. Oldenberg*, 671 F.Supp. 720, 724 (D.Utah 1987) and *FSLIC v. Aetna Cas. & Sur. Co.*, 701 F.Supp. 1357, 1363 (E.D.Tenn.1988) holding exclusions contrary to public policy because they hamper FSLIC in carrying out its duties.

*ly upon the taking over of the Insured by a receiver or other liquidator or by State or Federal Officials."* *Aetna,* 903 F.2d at 1075 (emphasis in original). These cases do not stand for the proposition that insurance coverage is unavailable for claims as to which timely notice was given during the Policy Year.

For the foregoing reasons, this Court rules that the Merger/Consolidation Clause did not terminate American Casualty's coverage when the RTC was appointed receiver.

#### (E) *Discovery*

■ The RTC argues that only the issues of timeliness and sufficiency of notice (Count IV) are ripe for summary judgment. The RTC asserts that this Court should delay ruling on the other three issues (the endorsement issues) because the RTC has had insufficient time to obtain discovery from American Casualty.

In support of its argument, American Casualty states the following. This case was filed in August, 1991. Magistrate Judge Cohen stayed discovery until December 16, 1991. The original discovery completion date of February 26, 1992 was never extended. On January 22, 1992, American Casualty objected to many of RTC's discovery requests. The RTC argues that to try this case, it must rely on documents and information from American Casualty in order to learn what American Casualty believed was the scope and meaning of the endorsements.

This Court is not persuaded. The language of the Regulatory Exclusion is unambiguous and does not violate public policy. *Baker,* 758 F.Supp. at 1348 (no additional discovery regarding intent of parties allowed where regulatory exclusion clearly excludes claims by FDIC and is not ambiguous). Similarly, the other issues are questions of law as to which the necessary material facts have already been discovered.

#### CONCLUSION

For the foregoing reasons, American Casualty's Motion for summary judgment is ALLOWED IN PART on Count III and DENIED IN PART on Counts I, II, and IV.

Accordingly, RTC's Cross–Motion for partial summary judgment is ALLOWED on Count IV. Shuck's and Fishkin's Cross–Motions for Summary Judgment are DENIED IN PART on Count III and ALLOWED IN PART on Counts I, II, IV.

Given the sweep of these various motions and cross-motions, there appearing to be no genuine issue of material fact, judgment shall enter declaring that American Casualty has a duty to indemnify Sentry's officers and directors in accordance with the terms of its policy as to all claims, other than claims of the RTC or any other regulatory agency, within the ambit of the notices of July 25 and August 29, 1990.

SO ORDERED.